**STATE of Missouri, Respondent,**

v.

**Thomas W. MADDOX, Appellant.**

**No. 44104.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 13, 1983.

Danald V. Nangle, St. Louis, for appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals from a jury conviction of second degree burglary and stealing a firearm. Finding defendant a persistent offender, the trial court sentenced him to consecutive terms of fifteen years imprisonment for the burglary and five years imprisonment for stealing the firearm. We affirm.

On the night of January 5, 1980, while on duty with the Lakeshire, Missouri, Police Department, Officer Ulozas noticed a car with no lights parked on the wrong side of the street in front of an unlit house. Aware of the recent increase in the number of area burglaries, Officer Ulozas became suspicious. Upon observing defendant enter the passenger side of the car while a companion remained at the wheel Ulozas activated his red lights to investigate and a chase ensued. The chase was interrupted when defendant and his driver rear-ended another car but the burglars ultimately won their race with Ulozas by fleeing on foot. Ulozas returned to the accident scene and discovered weapons, jewelry, fur coats, leather coats, and two pair of gloves in the trunk of the burglar's abandoned car.

Ulozas returned to where he first encountered the burglars and discovered the ransacked house belonged to Richmond Heights Police Chief Anderson.

The burglar's abandoned car was registered to defendant and Ulozas identified defendant as the person he saw entering the vehicle in front of Chief Anderson's home. Chief Anderson identified the items found in the trunk of the car as his. The sufficiency of the evidence is not challenged.

■ Prior to trial, upon defendant's request, the trial court ordered the exclusion of any evidence indicating defendant was a "police character" or an individual with a police record. Defendant claims the prosecutor violated that order in the following direct examination of Officer Ulozas:

Q (by Mr. Chancellor): Did you ever see a photograph of the person that you saw in the automobile?

A: Yes, sir, I have.

Q: Okay. What was your purpose in looking at that photograph.

A: Mainly to familiarize myself with the photograph.

Q: Did you recognize the photograph?

A: I don't understand. You mean—at which time, sir?

Q: After the accident at some later time did you apply for a warrant in this case?

A: Yes, sir, I did.

Q: Prior to doing that what did you do?

A: I responded to the St. Louis County I.D. section.

MR. NANGLE: I'll object to that, your Honor, and at this time I want to place my objection—

THE COURT: I'll sustain it as to narrative-type testimony.

At a temporary recess called by the trial court, defendant moved for a mistrial. The trial court denied the motion and defendant requested no other relief.

The decision to grant a mistrial on mention of defendant's prior criminal activity rests within the trial court's sound discretion. *State v. Harris,* 547 S.W.2d 473, 475 (Mo. banc 1977). Mistrial is a drastic remedy, to be granted only with the greatest caution and in extraordinary circumstances. *State v. Morgan,* 592 S.W.2d 796, 808 (Mo. banc 1980), *vacated on other grounds,* 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980).

*State v. Gilbert,* 636 S.W.2d 940, 943 (Mo. banc 1982). We defer to the trial court's superior vantage in determining the prejudicial effect of Ulozas' remark. The witness' answer was apparently volunteered and no bad faith on the part of the prosecutor is shown. Furthermore, the witness' response was not a direct reference to defendant's prior arrests. See, *State v. Barnes,* 536 S.W.2d 932, 933 (Mo.App.1976). We find no abuse of the trial court's discretion.

█ Defendant also claims Ulozas' testimony that he "recognized" defendant raised an inference of prior criminal association. The testimony was admitted without objection. We find no error, plain or otherwise, committed by the trial court in failing to take remedial action upon its own motion. "Mere familiarity with a police officer does not constitute evidence that one has been arrested or convicted of another crime." *State v. Childs,* 652 S.W.2d 161, 162 (Mo. App.1983).

Finally, defendant contends the trial court abused its discretion when it failed to instruct the jury to disregard portions of the prosecutor's closing argument or to declare a mistrial when the prosecutor referred to defendant as a "professional burglar" and later as a "king of burglars." As to the first reference, the trial court sustained defendant's objection and no further relief was requested. In the second instance, defendant made no objection whatsoever.

█ The trial court is entrusted with broad discretion in controlling the scope and content of closing arguments and the court is to accord counsel wide latitude in their summations. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982). Nevertheless, a prosecutor should refrain from invoking personal epithets against a defendant or attempting to inflame the passions and prejudices of the jury. *State v. Swenson,* 551 S.W.2d 917, 919 (Mo.App.1977). A conviction will be reversed when it is established the comments complained of had a decisive effect on the jury's determination. *State v. Newlon, supra.*

█ The first allegedly improper reference by the prosecutor to the defendant took place during the opening portion of the state's closing argument:

MR. CHANCELLOR (Prosecutor): "... Let me tell you something else. The professional burglars are pretty careful about making sure nobody is home, and, of course, they sit there and wait for Mr. and Mrs. Anderson—

MR. NANGLE (Defense Counsel): Your Honor, I'll object at this point to the inference that he is a professional burglar.

THE COURT: I'll sustain the objection.

Insofar as all relief requested by defendant was granted, no trial error occurred. *State v. Lane,* 613 S.W.2d 669, 679 (Mo.App.1981); *State v. Bibee,* 496 S.W.2d 305, 311–312 (Mo.App.1973).

The second reference complained of occurred during the rebuttal portion of the state's closing argument:

MR. CHANCELLOR (Prosecutor): "... The other thing, before I leave it; why this house? Interesting. All the houses in Lakeshire. And I submit to you that wasn't the first night they watched that house. And I submit to you it was no accident that that was the Chief of Police. Why? Well, policemen all have guns. Everybody knows that. Most policemen have more than one. You will find guns in policemen's homes. I don't know if they thought they were going to

find that the Chief was a gun collector. I don't think they knew they were in that kind of situation. But they went one more—he sent out a message to all of his pals: 'I am not just any burglar, I am Tommie Maddox, I am a king of burglars, I am going to hit the Chief of Police.' MR. NANGLE: Your Honor,—never mind."

Obviously defendant abandoned any objection he may have wished to raise and requested no other relief from the court.

■ Therefore, we are called upon in both instances to determine whether plain error occurred by the trial court's failure to interfere with the state's closing argument without invitation. "(R)elief should be rarely granted on assertions of *plain error* as to closing argument, for where no objection was lodged, trial strategy is an important consideration and such assertions are generally denied without explication." *State v. Newlon*, 627 S.W.2d at 616 (emphasis original). We find the prosecutor's references merely emphasized the fact that by virtue of burglarizing the home of the highest ranking law enforcement official in the community, defendant sought to make the statement he could burglarize anyone. The remarks did not constitute direct evidence that defendant committed other crimes. We do not find the refusal of the trial court to act *sua sponte* a manifest injustice or miscarriage of justice in the present case.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.