**Lynell D. DOBBS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 29221.**

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 2009.

Nancy A. McKerrow, Columbia, for Appellant.

Chris Koster, Atty. Gen., and Jamie Pamela Rasmussen, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Lynell D. Dobbs ("Movant") appeals the motion court's denial following an evidentiary hearing of his "Amended Motion Under Rule 24.035."[1] In his sole

---

1. All rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo 2000.

point relied on, Movant asserts the motion court erred in denying his Rule 24.035 motion in that he was denied effective assistance of counsel based on his counsel's conflict of interests. We affirm the judgment of the motion court.

The record reveals Movant was charged by Felony Information on September 21, 2005, with one count of the Class C felony of burglary in the second degree, a violation of section 569.170, for a theft which allegedly occurred on May 6, 2004. Movant hired attorney Darrell Deputy ("Darrell") to represent him in this matter.

On July 10, 2006, pursuant to a plea agreement, Movant pled guilty to the aforementioned charge. At the guilty plea hearing, Movant stated he understood the charges against him as recited by the plea court; he understood he had a right to proceed to trial; he understood the range of punishment; he had an opportunity to consult with his counsel and was satisfied with his representation; and he understood the rights he was waiving by pleading guilty. Movant then informed the plea court he was pleading guilty because he was, in fact, guilty of the crime charged and no one had threatened or promised him anything in exchange for his guilty plea. Thereafter, Movant expressly pled guilty and the plea court convicted him of the crime charged "beyond a reasonable doubt." Movant was sentenced per the plea agreement to five years in the Missouri Department of Corrections with the execution of that sentence to be suspended. Movant was then placed on five years supervised probation.

At some point in early 2007 Movant violated his probation. On April 24, 2007, following a hearing, Movant's probation

was revoked and his five year sentence was executed.

On July 2, 2007, Movant filed his *pro se* Rule 24.035 motion. Thereafter, the motion court appointed counsel to represent Movant and an amended Rule 24.035 motion was filed on November 19, 2007. In his amended motion, Movant argued he was "denied conflict-free counsel." In particular he complained that Darrell's son, Scott Deputy ("Scott"), who had appeared in court on Movant's behalf on one occasion, had also served as the prosecuting attorney on Movant's charged offense.[2] Movant asserted that Scott had once appeared in court on the State's behalf to request a capias warrant against Movant for failing to appear in court on the burglary charge at issue in the underlying case. He asserted he was never informed of this conflict of interest by Darrell or Scott and that he never waived this conflict of interest such that he "was denied his rights to conflict-free counsel, effective assistance of counsel, and due process of law, and his plea was involuntarily entered."

The motion court held an evidentiary hearing on Movant's amended Rule 24.035 motion on March 14, 2008. At the evidentiary hearing, Darrell testified that Scott was not employed by him "but on occasion [he] would ask him if he would appear for [Darrell] if [Darrell] had a conflict." He related he asked Scott to appear for him on one occasion in relation to Movant's case. He asserted he informed Movant that Scott had been a prosecutor "but [he] didn't discuss what he did or necessarily his involvement." He stated he did not inform Movant about a potential conflict of interest "because [he] did not see any potential conflicts of interest if Scott was no

2. We have chosen to refer to the attorneys Deputy by their first names. We mean no disrespect in so doing. We also note that the record shows that Darrell and Movant both testified at the evidentiary hearing in this matter and that it was Darrell, not Scott, who appeared with Movant at his guilty plea hearing.

longer employed at the prosecutor's office if he simply appeared for [Darrell] on a case." Darrell also testified he had informed Movant that Scott was going to stand in for him on one occasion. Darrell related he did not feel there was a problem in doing that because Movant told him "he got along with Scott" and expressed no reservations about such an arrangement. Darrell said that he negotiated the plea agreement in the matter and was Movant's attorney of record such that Movant's case was his sole responsibility.

Regarding Movant's decision to accept the plea agreement, Darrell related Movant had previous legal entanglements and he counseled Movant "that if he could get out of this on probation, it would make sense for him to do that."[3] He told Movant he was prepared to take the matter to trial if that was Movant's decision, but he "couldn't guarantee to him that he was going to walk out of th[e] courtroom a free man and [he] felt with the plea offer ... he would get probation." He also related he told Movant that he needed to keep his promises to pay for Darrell's services, especially if he chose to proceed to trial.

Movant testified that Darrell never explained to him that Scott might appear on his behalf. He related he was familiar with Scott because Scott retrieved from him his weekly payments to Darrell for his legal fees. He stated he thought Scott appeared in court with him "[a]t least twice...." Movant testified it was not until his preliminary hearing that Scott told him he had been a "prosecuting attorney on [his] case." He related Darrell never advised him of Scott's previous employment and neither he nor Scott discussed with Movant any potential conflict of interest. He stated he did not know about

conflicts of interests at the time of his plea and he "found out about the conflict of interest" while in prison.

Movant also related that Darrell presented him with the plea agreement on the day of trial and informed him Scott "had worked out a deal with the prosecuting attorneys' office...." Movant testified he did not want to accept the deal and wanted to proceed to trial. He related Darrell then told him that "he wouldn't represent [him] anymore ..." if he did not accept the plea agreement. He stated Darrell "told [him] that [he] hadn't paid him all the money [he] needed to pay him in order to go to a jury trial." He related Darrell's statements caused him to accept the plea because he felt "that [he] couldn't get another attorney" and he did not have any more money. He related that he was satisfied with Darrell's representation until their conversation relating to the plea agreement when he felt he was being abandoned. He stated he did not inform the plea court of his dissatisfaction because Scott had been a prosecuting attorney and Darrell had "been an attorney around here for all these years—that something would happen to [him]. That ... [he] would have some problems with the court system."

The motion court entered its "Order Denying Movant's Motion to Vacate, Set Aside or Correct Judgment and Sentence under Rule 24.035" on June 13, 2008. The motion court found Darrell was Movant's attorney of record and Movant "does not claim that Darrell ... ha[s] any conflict of interest." Finding the testimony of Darrell to be more credible than that of Movant, the motion court held that Scott "did not work on the case nor did he negotiate

---

**3.** He related that at that time Movant "was already on probation and/or parole ..." in

two other cases.

the plea agreement;" that Scott "was not actively representing a competing interest;" and that Movant "has not proven that Scott['s] ... actions adversely affected [Darrell's] representation of Movant." This appeal by Movant followed.

■ In his sole point relied on, Movant maintains his rights were violated

in that Scott ... represented the State as a Greene County Assistant Prosecuting Attorney at the time the charges at issue were filed against [Movant] and he appeared for the State on at least one occasion; later, he appeared as defense counsel for [Movant] without receiving a waiver of this conflict. Conflict of Interest is presumed prejudicial to the rights of [Movant].

■ "Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Boyd v. State*, 205 S.W.3d 334, 338 (Mo.App.2006); *see* Rule 24.035(k). "Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the 'definite and firm impression that a mistake has been made.' " *Morehead v. State*, 145 S.W.3d 922, 927 (Mo.App.2004) (quoting *Rice v. State*, 988 S.W.2d 556, 558 (Mo.App.1999)). We presume that the motion court's findings of fact and conclusions of law are correct. *Butts v. State*, 85 S.W.3d 132, 134 (Mo.App.2002). "Movant bears the burden of proving, by a preponderance of the evidence, that the motion court erred." *Huth v. State*, 976 S.W.2d 514, 516 (Mo.App. 1998).

■ "To prevail on a claim of ineffective assistance of counsel where a movant has entered a plea of guilty, a 'movant must show his counsel's representation fell below an objective standard of reasonable-

ness and that, as a result, he was prejudiced.' " *Boyd*, 205 S.W.3d at 338 (quoting *Cupp v. State*, 935 S.W.2d 367, 368 (Mo. App.1996)); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). " 'Movant must show, but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial.' " *Boyd*, 205 S.W.3d at 338 (quoting *Cupp*, 935 S.W.2d at 368). "Where, as here, there is a negotiated plea of guilty, a claim of 'ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made.' " *Id.* (quoting *Cupp*, 935 S.W.2d at 368).

■■ To prevail on a claim of ineffective assistance of counsel founded on a conflict of interest, the movant must show that an actual conflict of interest adversely affected counsel's performance. *Helmig v. State*, 42 S.W.3d 658, 680 (Mo.App.2001); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). " 'In order to prove a conflict of interest, something must have been done by counsel or something must have been forgone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another.' " *Price v. State*, 171 S.W.3d 154, 157 (Mo.App.2005) (quoting *Helmig*, 42 S.W.3d at 680). "If the movant proves that counsel had an actual conflict of interest affecting counsel's performance, then prejudice is presumed." *Lomax v. State*, 163 S.W.3d 561, 564 (Mo.App.2005).

In support of his contention, Movant relies on *Douglas v. State*, 630 S.W.2d 162 (Mo.App.1982), and *Burns v. Richards*, 248 S.W.3d 603 (Mo. banc 2008). In *Douglas*, 630 S.W.2d at 167, the movant claimed he was denied effective assistance of counsel because appellate counsel on his direct ap-

peal, who was at that time working for the public defender's office, had also been employed by the prosecutor's office at the time of the movant's conviction. "In the course of appeal, the [movant] *pro se* moved to dismiss [appellate counsel] on the ground of conflict of interests;" relief was granted; and new counsel was appointed for the remainder of the movant's direct appeal. *Id.* The movant later brought his motion for post-conviction relief asserting he was prejudiced by the conflict of interests. *Id.* Citing *State v. Boyd,* 560 S.W.2d 296, 297 (Mo.App.1977), the *Douglas* court noted that "[a] former prosecutor who defends on appeal a client for a conviction while the counsel served on the prosecution staff represents a conflict of interests" and "[i]n the context of the conceded evidence that means that the appeal of the [movant] was prejudiced *per se* by the dual interests of counsel. . . ." *Id.*

Movant also relies on *Burns,* 248 S.W.3d 603. In *Burns,* the defendant in a criminal case in Holt County brought a writ of prohibition based on the trial court's denial of her "motion to disqualify the prosecuting attorney." *Id.* at 604. The record revealed that defendant had previously been charged in Nodaway County with "attempting to obtain generic methadone with a 'false or forged prescription,'" and that she had hired attorney Syd Weybrew who entered his appearance on her behalf on August 7, 2006. *Id.* "Weybrew continued to represent [the defendant] until he withdrew on November 15, 2006, having already appeared on her behalf during a preliminary hearing and arraignment." *Id.* "Then, five months later, on April 10, 2007, Weybrew, acting in his capacity as the newly-elected prosecuting attorney of Holt County, filed a felony complaint against [the defendant] for possession of percocet, a controlled substance." *Id.* "The respondent judge, presiding over both matters, denied [the defendant's] mo-

tion to disqualify Weybrew . . ., and thereafter, the Court of Appeals, Western District, denied [the defendant's] petition for a writ of prohibition." *Burns,* 248 S.W.3d at 604.

On appeal to the Supreme Court of Missouri, the defendant argued "Weybrew has confidential information highly relevant to her defense in the Holt County case as a result of his work in her defense in the Nodaway County case, which involved substantially similar charges." *Id.* The Supreme Court set out that

> Rule 4–1.9 of Missouri's Rules of Professional Conduct (Conflict of Interest: Former Client) provides that

> 'A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.'

*Id.* In making its writ of prohibition absolute, the court wrote that

> Weybrew's prosecution of the Holt County matter is prohibited because it is 'substantially related' to the prosecution in Nodaway County. Both charges allege a violation of chapter 195 . . . and both involve possession or attempting to obtain possession of controlled substances that otherwise are legal pharmaceuticals when prescribed by a physician. In addition, the [S]tate's interest in prosecuting [the defendant], whether in Nodaway County or Holt County, is obviously 'materially adverse' to [the defendant's] interest in defending against the prosecutions.

*Id.* at 604–05. The court also opined that "prejudice must be presumed because of the concern that the prosecutor has obtained confidential information while rep-

resenting [the] defendant that can be used while prosecuting her." *Id.* at 605.

It is our view, however, that neither *Douglas* nor *Burns* aid Movant's case. First, both of these cases deal with direct conflicts of interests where the attorneys of record were involved on both sides of the cases. Here, Movant does not make the complaint that Darrell had a conflict of interest based on having appeared on both sides of his case. Second, in *Douglas* appellate counsel was employed by the prosecutor's office at the time of the defendant's conviction. Here, there is no allegation that either Darrell or Scott was employed by the prosecutor's office at the time of Movant's conviction. Third, *Burns* specifically relies on a rule of professional conduct which was enacted to protect former clients from unfair advantage which could be gained by the knowledge of their former attorneys. That is not our case here. Movant was not a former client of either attorney such that neither gained any knowledge from a former representation which worked to the disadvantage of Movant. Rather, Movant's allegation of a conflict of interest is based on the fact that defense counsel's son, who had appeared at least once in court on Movant's behalf, had also been employed by the prosecutor's office, where he apparently made one appearance in court on the State's behalf in Movant's underlying criminal case. It is clear, however, that Scott was not the prosecuting attorney who filed the Information against Movant nor was he employed by the prosecuting attorney's office at the time Movant was actually convicted. Further, Scott's involvement with this case was based purely on a ministerial favor for his father, the attorney of record, and even Movant testified that on the occasion Scott appeared in court with him he "walked in the courtroom and ... sat down for five minutes. Then [Scott] gave [him] the paperwork stating [he would] see [Movant] on [his] next court date." Furthermore, Darrell testified Movant was aware Scott was a former prosecutor and Darrell related that Movant did not have a problem with that fact. Additionally, Movant admitted he knew about Scott's previous employment at the time he entered his guilty plea. Based on the foregoing, Movant has not proven Darrell took any actions which were " 'detrimental to the interests of [Movant] and advantageous to another.' " *Price,* 171 S.W.3d at 157 (quoting *Helmig,* 42 S.W.3d at 680). Indeed, Movant fails to prove Darrell's " 'representation fell below an objective standard of reasonableness....' " *Boyd,* 205 S.W.3d at 338 (quoting *Cupp,* 935 S.W.2d at 368). Accordingly, this defeats Movant's claim of ineffective assistance of counsel. *Yoakum v. State,* 849 S.W.2d 685, 691 (Mo.App. 1993). The motion court did not err in denying Movant's amended Rule 24.035 motion. Point denied.

The findings of fact and conclusions of law of the motion court are affirmed.

BATES, J., and SCOTT, P.J., concur.